IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

D.W.J.,

        Plaintiff,

  v.

WAUSAU BUSINESS INSURANCE COMPANY,

        Defendant.

Case No. 5:15-cv-00003-SLG

## ORDER RE MOTION TO DISMISS

Before the Court is Defendant Wausau Business Insurance Company's Motion to Dismiss at Docket 7. Plaintiff D.W.J. opposed at Docket 12, and Defendant replied at Docket 18. Oral argument was not requested and was not necessary to the Court's determination of the motion. For the reasons set forth below, the motion will be granted.

## FACTS & PROCEEDINGS

This is an insurance coverage dispute arising out of a sexual assault that occurred at the Super 8 Motel in Ketchikan in May 2011. The victim of the assault, D.W.J., brings this action as the assignee of the hotel employee who committed the assault, Robert Callanan. The defendant, Wausau Business Insurance Company, provides specified liability insurance to the hotel and, by extension, its employees. Plaintiff D.W.J. alleges that Wausau should have defended and indemnified Mr. Callanan for his sexual assault. The parties do not dispute the majority of the facts.[1]

---

[1] The operative complaint in this case, at Docket 1-2, alleges only the date of the incident and Mr. Callanan's employment at the time of the assault. Docket 1-2 (Complaint) at ¶¶ 5, 9. As

On May 26, 2011, D.W.J. checked into the Super 8 Motel in Ketchikan. Robert Callanan was the only employee on the premises that day, and registered D.W.J. into the hotel. Mr. Callanan assigned D.W.J. to a room on the first floor, near the hotel's front desk. Within ten to fifteen minutes after D.W.J. had checked into her room, Mr. Callanan used his key to open D.W.J.'s door. He told her that he was there to fix the television, but instead of fixing the television, he "pushed [her] down on her own hotel bed, stripped her nearly naked, groped her breasts and performed cunnilingus on her, all against her will and after she told him to stop."[2] D.W.J. told Mr. Callanan that she needed to use the restroom, and from there called her husband and the police. When D.W.J.'s husband arrived, "Mr. Callanan had D.W.J. gripped by the arm, and was seen attempting to leave [the room] with [her]."[3]

On May 14, 2012, Mr. Callanan was convicted by a jury of First Degree Sexual Assault as a result of this incident.[4] He was sentenced to 24 years in prison with 10 years suspended.[5] Mr. Callanan appealed his conviction.

---

discussed further herein, the Court has considered this motion to dismiss as a motion for summary judgment, and relies primarily on the factual allegations set for in the First Amended Complaint filed by D.W.J. in July 2012 against the owner of the hotel—the Peninsula Group—and Mr. Callanan. *See infra*, pages 5–6.

[2] Docket 7-2 (Prior Complaint) at ¶ 11.

[3] Docket 7-2 (Prior Complaint) at ¶ 16.

[4] Docket 7-1 (Judgment) at 1; *see* Case History, Case No. 1KE-11-00523CR, *available at* http://www.courtrecords.alaska.gov/eservices/?x=fUeG4NJ5w38ezsjqxenun7nqtUMww*TKOmV ivCFEJCuDa6ZHn9yMnbO7jqV-KBCdzmNvpyStWhqgcmZYt37xiA (date of conviction).

[5] Docket 7-1 (Judgment) at 2.

The day following his conviction, May 15, 2012, D.W.J. filed a civil action against Mr. Callanan and the Peninsula Group—the entity that owned the Super 8 Motel.[6] In that complaint, D.W.J. noted that Mr. Callanan had been convicted of sexual assault in the first degree.[7] D.W.J. alleged (1) assault and sexual battery, and assault and battery related to kidnapping; (2) negligent failure to supervise, hire, train, or screen Mr. Callanan, and negligent infliction of emotional distress; (3) breach of contract; and (4) claims under the Alaska Unfair Trade Practices and Consumer Protection Act.[8] D.W.J.'s First Amended Complaint identified the sexual assault as an "intentional tort[]"; it did not assert that the assault was an accident, negligent, or unintentional.[9] The only references to negligence in that complaint were as follows: D.W.J. alleged that Mr. Callanan was liable for negligence because he assigned her a room on the first floor, and she asserted that Mr. Callanan had a duty to "keep [her] safe," and he breached this duty "by assaulting [her] and engaging in negligent, or reckless and outrageous conduct against her."[10]

In the prior case, D.W.J. settled her claims against the Peninsula Group before trial. Mr. Callanan did not enter an appearance, nor did he tender the civil complaint to Wausau; however, Wausau still sent Mr. Callanan a letter dated October 11, 2012

---

[6] Docket 7-2 (Prior Complaint) at ¶¶ 21, 22; *see* Case Record in case 1KE-12-224CI, *available at* http://www.courtrecords.alaska.gov/eservices/?x=Jqs6ku2R718lccY*qJLp3o-FTPULDKEDQOHAXpiGGMbt4u-fMX50Bld4FOtrPKV*PWeqlYRe52sh984c93fELA (date of filing).

[7] Docket 7-2 (Prior Complaint) at ¶ 20; Docket 7-1 (Judgment) at 1.

[8] Docket 7-2 (Prior Complaint) at ¶¶ 24–41.

[9] Docket 7-2 (Prior Complaint) at ¶ 26.

[10] Docket 7-2 (Prior Complaint) at ¶¶ 27–28, 32.

denying coverage. Wausau explained that it would not provide a defense to Mr. Callanan because "[a] sexual assault obviously is not part of your duties and was not within the scope of your employment by Peninsula."[11] Wausau added that even if Mr. Callanan was an "insured," his sexual assault of D.W.J. was not an "occurrence" such that it was covered under the policy.[12]

Mr. Callanan died in July 2013, while his criminal case was still on appeal.[13] Because he had not appeared in the civil case, that court entered a default judgment against Mr. Callanan's estate in the amount of $641,264.86.[14] In her memorandum in support of the entry of the default judgment, D.W.J. asserted that all of her damages should be allocated to Mr. Callanan and none to the Peninsula Group, because "[w]ith [Mr.] Callanan's assault being intentional, there is no fault to allocate and, thus, no offset."[15] The court evidently agreed and entered a default judgment against Mr. Callanan for 100% of the claimed damages; the parties here agree there was no allocation of fault to the Peninsula Group.[16] Mr. Callanan's estate then assigned any claim it might have against Wausau to D.W.J., and D.W.J. filed the instant case against Wausau in Alaska

---

[11] Docket 7-3 (Letter) at 1–2.

[12] Docket 7-3 (Letter) at 2.

[13] Docket 13 (Opp'n) at 3; Docket 7 (Mot.) at 4.

[14] Docket 7-4 (Default Judgment).

[15] Docket 7-5 (Mem. in Support of Default Judgment) at 2.

[16] *See* Docket 7-5 (Mem.); Docket 7-4 (Default Judgment); Case Record in case 1KE-12-224CI, *available at* http://www.courtrecords.alaska.gov/eservices/?x=Jqs6ku2R718lccY*qJLp3o-FTPULDKEDQOHAXpiGGMbt4u-fMX50Bld4FOtrPKV*PWeqlYRe52sh984c93fELA.

Superior Court. The case was timely removed to this Court.[17] D.W.J. asserts claims of negligent adjustment, breach of contract, and breach of the covenant of good faith and fair dealing; she seeks damages in excess of $100,000, including punitive damages.[18]

At issue in this case is whether the Wausau policy provides coverage to Mr. Callanan for his conduct towards D.W.J. Wausau asserts that the Court should dismiss the action because: (1) Mr. Callanan was not acting within the scope of his employment when he assaulted D.W.J., and, therefore, the Wausau policy provides him no coverage; and (2) Mr. Callanan's intentional sexual assault of D.W.J. does not qualify as an "occurrence" under the policy.

## DISCUSSION

### I. Jurisdiction

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Because the Court is sitting in diversity, it applies the substantive law of the forum state, Alaska, including the collateral estoppel rules of that state.[19]

### II. Conversion to Summary Judgment

Defendant Wausau styles its briefing as a motion to dismiss D.W.J.'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on a motion to dismiss, a court "consider[s] only allegations contained in the pleadings, exhibits attached to the

---

[17] Docket 1 (Removal).

[18] Docket 1-2 (Complaint) at ¶¶ 35–42.

[19] *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938); *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002); *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state . . . .").

complaint, and matters properly subject to judicial notice."[20]  However, Wausau has presented as attachments materials beyond the scope of the challenged pleading, and D.W.J. does not assert that the attached additional materials should be excluded.[21]

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[22]  Either party may bring the conversion provision into operation by submitting materials other than the challenged pleading.[23]  A district court has discretion to accept or reject this additional material based on "whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action."[24]

The Court finds that consideration of the additional materials submitted without objection in this case will facilitate the disposition of the action, because the materials provide a comprehensive view of the dispute and the legal issues before the Court.  Therefore, the Court will not exclude the additional materials and will convert Wausau's motion to dismiss into a motion for summary judgment under Rule 56.

---

[20] *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)) (internal quotation marks omitted).

[21] *See* Docket 12 (Opp'n) at 2.  D.W.J.'s Complaint is the challenged pleading.  *See generally* FED. R. CIV. P. 7(a) (Pleadings Allowed).

[22] FED. R. CIV. P. 12(d).

[23] *Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion*, 5C FED. PRAC. & PROC. CIV. § 1366 (3d ed. 2016).

[24] *Id.*

Rule 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court must draw "all justifiable inferences" in the non-moving party's favor.[25] The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[26] If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[27] The non-moving party may not rely on mere allegations or denials. To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[28] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment to the moving party is appropriate.[29]

## III.   Scope of Employment

The Wausau insurance policy provides coverage for employees, "but only for acts within the scope of their employment by [Peninsula Group] or while performing duties related to the conduct of [Peninsula Group's] business."[30]

---

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[27] *Anderson*, 477 U.S. at 250; *Oracle*, 627 F.3d at 387.

[28] *Anderson*, 477 U.S. at 248.

[29] *Id.* at 249–50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

[30] Docket 7-6 (Policy) at 13.

Wausau asserts that under no set of facts can sexual activity, whether consensual or nonconsensual, be within Mr. Callanan's scope of employment as a front desk clerk. Wausau argues that under Alaska law an act must be motivated at least in part by a desire to serve the employer, and a sexual assault cannot have such a motivation. Wausau also asserts that no insured could have a reasonable expectation of being insured for sexual assault.[31]

D.W.J. responds that she has also asserted a "negligent billeting" theory, under which Mr. Callanan's action of assigning her a room on the first floor of the hotel made her less safe. Because checking a guest into the hotel is motivated at least in part by a desire to serve the employer, she asserts coverage would apply. And D.W.J. relies heavily on a case where the Alaska Supreme Court held that a counselor's sexual relations with a patient were related to his employment.[32] Finally, D.W.J. asserts that the assault was close enough in time and space to Mr. Callanan's performance of hotel-related duties that it was within his scope of employment or while performing duties related to Peninsula Group's business.[33]

---

[31] Docket 7 (Mot.) at 4–15.

[32] Docket 13 (Opp'n) at 10 (quoting *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344 (Alaska 1990)).

[33] Docket 13 (Opp'n) at 4–23.

In determining whether an employee has acted within his scope of employment, Alaska courts apply a flexible multi-factored test.[34] The test adopts the factors set forth in the Restatement (Second) of Agency:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>    (a) it is of the kind he is employed to perform;
>    (b) it occurs substantially within the authorized time and space limits;
>    (c) it is actuated, at least in part, by a purpose to serve the master; and
>    (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[35]

Not all four of the Restatement factors are required—rather, together they are relevant considerations.[36] However, the Alaska Supreme Court has held that that some purpose to serve the master, factor (c) of the test, must be present.[37]

The case that D.W.J. relies on most heavily is *Doe v. Samaritan Counseling Center*.[38] In that case, a therapist engaged in kissing and fondling with his patient during sessions, and after the patient terminated the sessions the two engaged in sexual intercourse. The patient filed suit against the counseling center for the counselor's actions, in part based on a theory of respondeat superior liability. The trial court granted

---

[34] *Doe*, 791 P.2d at 347; *Rosenbaum v. Burgess*, No. 3:06-00144 (RJB), 2007 WL 623795, at *4 (D. Alaska Feb. 23, 2007).

[35] Restatement (Second) of Agency § 228.

[36] *Doe*, 791 P.2d at 347.

[37] *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 924 n.36 (Alaska 1999).

[38] 791 P.2d 344 (Alaska 1990).

summary judgment to the counseling center on the respondeat superior claim, but the Alaska Supreme Court reversed. It framed the question as whether an employee could be acting in the scope of employment even if the employee's tortious conduct was not motivated by a desire to serve the employer.[39] It opined that "where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been satisfied."[40] Because of a therapy phenomenon called transference in which a patient becomes dependent on the therapist, the court reasoned that the sexual encounter was incidental to the therapy.[41] Thus, the court appeared to hold that "motivation to serve" could be deemed satisfied so long as the employee's acts were "reasonably incidental" to those tasks the employee was hired to perform; no actual desire to serve the employer need be present.

Nine years later, in *VECO, Inc. v. Rosebrock*, the Alaska Supreme Court retreated from its holding in *Doe*.[42] There, an employee sued VECO, alleging a hostile work environment and retaliation. While the scope of employment test was not the focus of the case, the court cited with approval the Restatement of Agency, that an "employee is not acting within the scope of employment unless his actions are 'actuated, at least in part, by a purpose to serve the master.'"[43] The court cited *Doe's* language regarding the

---

[39] *Doe*, 791 P.2d at 345–47.

[40] *Id.* at 348.

[41] *Id.* at 348–49.

[42] 970 P.2d 906 (Alaska 1999).

[43] *Rosebrock*, 970 P.2d at 924 (quoting Restatement (Second) of Agency § 228(1)(c)).

5:15-cv-00003, *D.W.J. v. Wausau Bus. Ins. Co.*
Order Re Motion to Dismiss
Page 10 of 20

tortious conduct being "reasonably incidental to the employee's legitimate work activities" and held that "to the extent that this language suggests that the employee's acts need not be motivated in fact at least to some degree to serve the master's business we disapprove of it."[44] The court noted that the aided in agency theory from another section of the Restatement would have been more applicable to the facts of *Doe*, as it does not require that the conduct be within the scope of employment.[45] The Alaska Supreme Court concluded that "imposing vicarious liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified."[46]

Thus, after *Rosebrock*, although Alaska has not strictly required that each of the four factors of the Restatement of Agency be present, the Alaska Supreme Court has stated that an "employee is not acting within the scope of employment unless his actions are 'actuated, at least in part, by a purpose to serve the master.'"[47] Here, D.W.J. does not allege, nor could she rationally allege, that Mr. Callanan's criminal actions were at all carried out for the purpose of serving Peninsula Group. Under *Rosebrock*, an employee must be acting at least in part with a purpose to serve the master, and an employee perpetrating a sexual assault cannot do such. Moreover, even if this factor was not required, Mr. Callanan's conduct cannot meet two of the remaining three Restatement

---

[44] *Id.* at 924 n.36.

[45] *Id.* (citing Restatement (Second) of Agency § 219(2)(d) (Aided in Agency Section)).

[46] *Id.*

[47] *Id.* at 924 (quoting Restatement (Second) of Agency § 228(1)(c)).

factors. The Restatement also asks whether the conduct is "of the kind [the employee] is employed to perform."[48] Under no circumstances is a front desk clerk employed to perform sexual assaults, and D.W.J. does not allege such. D.W.J. also cannot meet the final factor, that "if force is intentionally used by the servant against another, the use of force is not unexpected by the master."[49] Here, force was intentionally used by Mr. Callanan against D.W.J., and that force would not have been expected by the Peninsula Group. Unlike a person employed in an occupation where a use of force could be expected, such as a security guard, Mr. Callanan was employed as a front desk clerk, a position that should not require any force. Finally, D.W.J. has alleged that Mr. Callanan's criminal act occurred "substantially within the authorized time and space limits" of his employment because the assault happened on the premises of the hotel during his shift.[50] But the ability to meet one out of four Restatement factors is insufficient: a sexual assault is "different in kind from that authorized . . . [and] too little actuated by a purpose to serve the master."[51]

D.W.J. also asserts that Mr. Callanan should be an insured because he was performing business-related tasks under the second portion of the policy language: "while performing duties related to the conduct of [Peninsula Group's] business."[52] But the Court

---

[48] Restatement (Second) of Agency § 228(1)(a).

[49] *Id.* at (1)(c).

[50] *See Id.* at (1)(b).

[51] *Id.* at (2).

[52] Docket 7-6 (Policy) at 13.

finds that in sexually assaulting D.W.J., Mr. Callanan was not performing a business-related task.[53] The fact that the assault happened on work premises and during Mr. Callanan's work shift is insufficient to bring Mr. Callanan's intentional sexual assault under the second portion of the policy language.[54] And, as discussed later in this order, Mr. Callanan is estopped by his criminal conviction of asserting that the sexual encounter was consensual.[55]

Finally, D.W.J. asserts a "negligent billeting" theory based on Mr. Callanan's action of placing D.W.J. on the ground floor of the hotel. The First Amended Complaint in the prior action did not specifically state a "negligent billeting" theory; rather, it expressly

---

[53] Although neither party cites to *Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093 (Alaska 2002), the Court will briefly discuss it as it ties in closely with D.W.J.'s argument that the assault should be covered because it occurred while Mr. Callanan was on duty at the hotel and allegedly entering D.W.J.'s room to fix the television. *See* Docket 13 (Opp'n) at 6–9. In *Laidlaw*, a student's mother brought an action for negligence against a transit company after a school bus driver caused an accident while driving under the influence of marijuana. The jury returned a verdict against Laidlaw Transit. On appeal, Laidlaw Transit argued that the driver's conduct was not in the scope of her employment because she had not ingested the marijuana out of a purpose to serve the employer. But the Alaska Supreme Court disagreed and held that the driver had "specifically been employed to drive a school bus" and had been performing that task at the time of the accident. The court held that "the conduct at issue—driving while impaired by marijuana—both arose out of and was incidental to [the driver's] legitimate work activities because it carried out the very function that [she] was hired to perform—driving a school bus." *Id.* at 1096–99. The facts presented in the instant case differ greatly from *Laidlaw*. Here, Mr. Callanan was not engaged in any activity he was hired to perform while he assaulted D.W.J., even if the Court assumes that he entered the room initially intending to fix the television.

[54] *See Selective Ins. Co. v. Oglebay*, No. Civ. AMD 05-951, 2005 WL 3027460, at *1 (D. Md. 2005), *aff'd*, 242 F. App'x 104 (4th Cir. 2007) (holding that assault performed in driving school car during work hours was not "while performing duties related to the conduct" of the driving school's business); *Baek v. Cont'l Cas. Co.*, 178 Cal. Rptr. 3d 622, 633 (Cal. App. 2014) ("Although the alleged sexual assault of Jaime W. occurred during a massage, the particular acts on which liability is premised—i.e., 'touch[ing], fondl[ing], rubb[ing], grabb[ing] and squeez[ing] Plaintiff's breasts, buttocks, inner thighs and genitals' . . . indisputably were not 'duties related to the conduct of [HMWC's] business' or acts of the kind Baek had been hired to perform.").

[55] *See infra*, page 16–17. And even if the sexual acts had been consensual, they still would not have been a business-related activity.

5:15-cv-00003, *D.W.J. v. Wausau Bus. Ins. Co.*
Order Re Motion to Dismiss
Page 13 of 20

stated that Mr. Callanan engaged in "deception, fraud, and false pretenses" by assigning D.W.J. to a ground-floor room.[56] Regarding negligence, the prior complaint simply stated that Mr. Callanan negligently "fail[ed] to keep D.W.J. safe," but did not elaborate.[57] But in any event, the act of assigning D.W.J. a room on the first floor, itself, was not the basis for D.W.J.'s claims; the basis for her claims arose when Mr. Callanan intentionally sexually assaulted her.[58] In *United Services Automobile Association v. Neary*, the Alaska Supreme Court held that "it is the unforeseen event, not every act of negligence preceding it, that constitutes the accident or occurrence for purposes of insurance coverage."[59] Thus, even if D.W.J. had expressly pled her "negligent billeting" claim in the prior complaint, the claim against Mr. Callanan would have still been a tort claim for intentional sexual assault, based on the facts alleged by D.W.J.[60]

---

[56] Docket 7-2 (Prior Complaint) at ¶ 37.

[57] Docket 7-2 (Prior Complaint) at 4.

[58] *See United Servs. Auto Ass'n v. Neary*, 307 P.3d 907, 913 (Alaska 2013) (holding that unforeseen event of child shooting another child constitutes the act for which there is coverage, not the parents' negligent acts in failing to secure firearm).

[59] *Neary*, 307 P.3d at 913.

[60] The duty to defend arises out of the facts of the case, not the label placed on the facts by the attorneys. *See State, Dep't of Transp. & Pub. Facil. v. State Farm Fire & Cas. Co.*, 929 P.2d 788, 792 (Alaska 1997); *see also Gonzalez v. Fire Ins. Exch.*, 184 Cal.Rptr.3d 394, 407 (Cal. App. 2015) ("A general boilerplate pleading of 'negligence' adds nothing to a complaint otherwise devoid of facts giving rise to a potential for covered liability."). Moreover, even if D.W.J. amended her complaint, she cannot cure the fact that the underlying action against Mr. Callanan was an intentional tort claim for sexual assault. *Ebner v. Fresh, Inc.*, 818 F.3d 799, 808 (9th Cir. 2016) ("Although, under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be 'freely' given, that liberality does not apply when amendment would be futile.").

Because Mr. Callanan's sexual assault was not performed within the scope of his employment or while performing business-related tasks, he is not an insured under the Peninsula Group's insurance policy with respect to D.W.J.'s particular injury.

## IV. Occurrence as Defined by the Policy

Because the Court has held that Mr. Callanan was not an additional insured for his sexual assault, it need not consider whether the assault could have been an "occurrence" covered under the policy. Nonetheless, the Court will also address this issue.

The Wausau policy covers only "bodily injury" that is caused by an "occurrence."[61] "[O]ccurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[62] The policy does not define "accident," but the Alaska Supreme Court has defined it as "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected."[63] The event must be unexpected and unintentional from the standpoint of the insured,[64] because "Alaska recognizes 'a general public policy against insuring a person against liability for his or her intentional acts.'"[65]

Wausau asserts that D.W.J. cannot allege any facts that would show the sexual assault was an accident as that term is interpreted in Alaska. It asserts that Mr. Callanan's

---

[61] Docket 7-6 (Policy) at 2.

[62] Docket 7-6 (Policy) at 21.

[63] *Neary*, 307 P.3d at 913 (quoting *Fejes v. Alaska Ins. Co.*, 984 P.2d 519, 523 (Alaska 1999)).

[64] *Shaw v. State Farm Mut. Auto Ins. Cos.*, 19 P.3d 588, 590–91 (Alaska 2001).

[65] *Kim v. Nat'l Indem. Co.*, 6 P.3d 264, 267 (Alaska 2000).

conviction for sexual assault in the first degree bars his assignee D.W.J. from asserting that he was merely mistaken about consent, and it asserts that the sexual assault was not an accident from Mr. Callanan's perspective.[66] D.W.J. responds that even if the conduct was intentional, the harm may not have been intentional from Mr. Callanan's viewpoint. And she asserts that Mr. Callanan may have accidentally believed that he had D.W.J.'s consent.[67]

In *Kim v. National Indemnity Co.*, the Alaska Supreme Court held that a cab driver could not be insured for sexually assaulting his minor passenger because the cab driver's abuse of the minor was intentional, not accidental.[68] The court held that "having been convicted of second- and third- degree sexual abuse of a minor, Kim was found to have knowingly engaged in sexual penetration and sexual contact with L.W. Thus, Kim's sexual contact with L.W. was deliberate rather than accidental."[69]

Here, Mr. Callanan was convicted of sexual assault in the first degree, in violation of AS 11.41.410(a). Under that statute, an offender is guilty if the offender "engages in sexual penetration with another person without consent of that person."[70] To prove the completed crime of first-degree sexual assault, the prosecution "is required to establish

---

[66] Docket 7 (Mot.) at 15–20.

[67] D.W.J. also returns to the negligent billeting theory, asserting that this was an occurrence that caused harm under the terms of the policy, but, as explained above, the Court finds that the relevant claim is the sexual assault, not any negligence that preceded it. *See supra*, page 13–14.

[68] 6 P.3d 264, 267 (Alaska 2000).

[69] *Kim*, 6 P.3d at 267.

[70] AS 11.41.410(a)(1).

5:15-cv-00003, *D.W.J. v. Wausau Bus. Ins. Co.*
Order Re Motion to Dismiss
Page 16 of 20

that the defendant (1) knowingly engaged in sexual intercourse and (2) recklessly disregarded the victim's lack of consent to that intercourse."[71]

Like in *Kim*, the Court finds that Mr. Callanan can offer no facts showing that his sexual assault of D.W.J was an accident. The criminal conviction establishes that the conduct was performed knowingly and that Mr. Callanan did not have consent for the sexual encounter.[72] After having been convicted of knowing and intentional conduct, Mr. Callanan's assignee cannot now argue that it was an accident. Accordingly, Wausau is entitled to summary judgment because the sexual assault was not an "occurrence" under the Wausau policy.

## V. Duty to Defend

D.W.J. asserts that even if Mr. Callanan was not covered for his sexual assault under the Peninsula Group's policy, Wausau still had a duty to defend him because it was unclear whether this was a case of mistaken consent. Moreover, D.W.J. represents that Wausau later learned that (1) Peninsula's manager had asserted that the conduct was

---

[71] *Sergie v. State*, 105 P.3d 1150, 1153 (Alaska App. 2005).

[72] A federal court sitting in diversity applies the collateral estoppel rules of the forum state. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002); *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state . . . ."). Under Alaska state law, "a conviction . . . will collaterally estop the criminal defendant from denying any element in a subsequent civil action against him that was necessarily established by the conviction, as long as the prior conviction was for a serious criminal offense and the defendant in fact had the opportunity for a full and fair hearing." *Lamb v. Anderson*, 147 P.3d 736, 742 (Alaska 2006); *see also Scott v. Robertson*, 583 P.2d 188, 191–92 (Alaska 1978) (adopting rule). The Court finds that Mr. Callanan's conviction was for a serious criminal offense and he had a full opportunity for a fair hearing. Therefore, collateral estoppel applies as to D.W.J.'s lack of consent. And the fact that Mr. Callanan died while the case was on appeal does not alter the result. *Wyatt v. Wyatt*, 65 P.3d 825, 831 (Alaska 2003) ("We have repeatedly held that the pendency of an appeal is irrelevant for the purposes of res judicata and collateral estoppel.").

consensual, and (2) D.W.J. had offered to release Mr. Callanan for additional money.[73] D.W.J. asserts that this information should have led Wausau to defend Mr. Callanan. D.W.J. also asserts that the law in this area is unclear.[74] Wausau counters that no insured could have a reasonable expectation of being insured for a sexual assault. And it asserts that Mr. Callanan's conviction estops his assignee from asserting that the sex acts were consensual.[75]

Mr. Callanan was convicted of first-degree sexual assault on May 14, 2012. Thus, as of May 14, 2012, it was established that Mr. Callanan lacked consent for his actions. On May 15, 2012, D.W.J. filed her civil suit against Mr. Callanan—the suit for which D.W.J. asserts Wausau should have provided a defense. Wausau sent Mr. Callanan a refusal-to-defend letter in October 2012, to which there is no indication Mr. Callanan ever responded.[76]

While an insurer's duty to defend is broader than its duty to indemnify, if the insurer can show a "complete and absolute absence of" coverage, then the insurer does not have a duty to defend.[77] As detailed above, the Court has found that a complete absence of coverage existed in this case, even taking the facts in the light most favorable to Mr. Callanan's assignee, D.W.J.

---

[73] Docket 1-2 (Complaint) at ¶¶ 27, 30.

[74] Docket 13 (Opp'n) at 20.

[75] Docket 7 (Mot.) at 4–15.

[76] Docket 13 (Opp'n) at 21; Docket 7-3 (Letter).

[77] *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 402 (Alaska 2014); *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).

This case bears similarities to *M.C. v. Northern Insurance Co. of New York*, a case involving an insurance coverage dispute for the sexual assault of a minor.[78] In *M.C.*, the civil suit and the criminal proceeding occurred concurrently. Initially, the insurer tendered a defense to the defendant in the civil suit, but when the defendant pled guilty to the criminal offense of sexual abuse of a minor, the insurer withdrew its defense and denied coverage in the companion civil case. The defendant then confessed judgment in the civil case and assigned his rights to proceed against the insurer to the victim and her mother. In their resulting case against the insurer, the Alaska Supreme Court held that the insurer owed no duty to defend once the defendant pled guilty to sexual abuse of a minor, because "the defendant could not conceivably have been covered by the policy," and at that juncture the insurer "could fairly conclude that the suit against [the defendant] was not 'within or potentially within' the policy's coverage."[79]

Here, at the time the underlying civil suit commenced, it had been established that Mr. Callanan had knowingly acted without D.W.J.'s consent; thus, Mr. Callanan could not conceivably have been covered by the policy, and Wausau could fairly conclude that the suit against Mr. Callanan was not within or potentially within the policy's coverage. Moreover, D.W.J.'s argument that later information should have caused Wausau to disregard the judgment of conviction entered by the State of Alaska is unpersuasive. And the Court finds that the law was not uncertain on this point such that there is no basis to support a finding of a duty to defend Mr. Callanan on that basis.

---

[78] 1 P.3d 673 (Alaska 2000).

[79] 1 P.3d at 674, 676–77.

5:15-cv-00003, *D.W.J. v. Wausau Bus. Ins. Co.*
Order Re Motion to Dismiss
Page 19 of 20

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Wausau's Motion to Dismiss at Docket 7, treated as a motion for summary judgment, is GRANTED. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 28th day of June, 2016.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE